UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SEAN ROGERS #447843,

      Plaintiff,

v.

HERIBERTO RUIZ-OJEDA, et al.,

      Defendants.

                             /

Case No. 2:18-cv-00115

Hon. Gordon J. Quist
U.S. District Judge

**REPORT AND RECOMMENDATION**

### I.    Introduction

State prisoner Sean Rogers filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 17, 2018. Rogers claims that, while he was imprisoned at Kinross Correctional Facility (KCF), Corrections Officer (CO) Ruiz-Ojeda retaliated against him, in violation of his First Amendment rights, by issuing two false misconduct tickets and a Prisoner Program and Work Assignment Evaluation Form (Michigan Department of Corrections (MDOC) Form CSJ-363) that recommended that Rogers be terminated from his job. Rogers also claims that Program Classification Director Besteman retaliated against him by issuing a Program Reclassification Report (CSJ-175) that suspended him from work.

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment. (ECF No. 59.) Defendants argue that Rogers failed to show a causal connection between his protected conduct (a threat to file a grievance or the

1

actual filing of a grievance) and their actions. They also argue that they would have taken the same actions regardless of the alleged protected activity. In addition, Defendants assert that Rogers's claims against the Defendants in their official capacity are barred by the Eleventh Amendment, and that Rogers's claims against Defendants in their personal capacities are barred by the doctrine of qualified immunity. In Rogers's response, he argues that there are genuine issues of fact as to merits of his claims and as to the applicability of qualified immunity. (ECF No. 65.) Defendants replied. (ECF No. 66.)

The undersigned concludes that there is no genuine issue of fact as to Rogers failing to establish his First Amendment retaliation claim against CO Ruiz-Ojeda based on Rogers's April 23, 2015 misconduct ticket because that ticket was issued before any alleged protected conduct. However, the undersigned concludes that there are genuine issues of fact as to Rogers's remaining First Amendment retaliation claims. There are genuine issues of fact because of the close temporal proximity between the protected conduct and the adverse actions, and because of statements made by Defendants according to Rogers's sworn testimony. Further, becuase of those genuine issues of fact and that prisoners have a clearly established right to file grievances, the undersigned concludes that the doctrine of qualified immunity does not bar Rogers's claims, except for the retaliation claim based on the April 23 ticket.

The undersigned respectfully recommends that this Court grant Defendants' motion (ECF No. 57) as to Rogers's first First Amendment retaliation claim against CO Ruiz-Ojeda and deny Defendants' motion as to all other claims.

## II.    Additional Relevant Procedural History

On July 17, 2020, Rogers filed this lawsuit in federal court. (ECF No. 1.) Initially, Rogers alleged violations of his First, Eighth, and Fourteenth Amendment rights against CO Ruiz-Ojeda and Director Besteman in their personal capacities. The Court issued a screening opinion and order that dismissed Rogers's Eighth and Fourteenth Amendment claims for failure to state a claim. (ECF No. 8, 9.) The only remaining claims are First Amendment retaliation claims.

This case was initially referred to Prisoner Early Mediation, but failed to settle. (ECF Nos. 12, 13, 17.) Defendants filed a motion for summary judgment and supporting brief on April 6, 2020. (ECF Nos. 57, 58.) On May 22, 2020, Rogers responded to Defendants' motion. (ECF No. 65.) Defendants replied on June 2, 2020. (ECF No. 66.)

## III.    Summary of Plaintiff's Allegations

Rogers's remaining claims and the alleged facts supporting those claims are summarized in the following table.

| n | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | CO Ruiz-Ojeda | 1st Amendment Retaliation (Personal Capacity) | 4/23/15 | CO Ruiz-Ojeda issued Rogers a misconduct ticket for being out of place. (ECF No. 1, PageID.9, 18.) |
| 2 | CO Ruiz-Ojeda | 1st Amendment Retaliation (Personal Capacity) | 4/24/15 | Rogers spoke to CO Ruiz-Ojeda about the out-of-place misconduct ticket and explained that he intended to issue a grievance against CO Ruiz-Ojeda. In response, CO Ruiz-Ojeda issued a retaliatory misconduct ticket for disobeying a direct order. (*Id.*, PageID.10-11, 20.) |

| n | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 3 | CO Ruiz-Ojeda | 1st Amendment Retaliation (Personal Capacity) | 4/30/15 | CO Ruiz-Ojeda wrote an MDOC Form CSJ-363 that recommended that Rogers be terminated from his job. (*Id.*, PageID.13, 21.) |
| 4 | Director Besteman | 1st Amendment Retaliation (Personal Capacity) | 5/7/15 | Director Besteman reclassified Rogers as unemployable because Rogers filed grievances against CO Ruiz-Ojeda. (*Id.*, PageID.15-17, 22.) In doing so, Director Bestman relied upon an inappropriately issued CSJ-363 form by CO Ruiz-Ojeda. (*Id.*) |

## IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Law Governing First Amendment Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

However, the Sixth Circuit has employed a burden-shifting approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

## VI. Summary of the Relevant Factual Timeline

Defendants' argument relies, in part, on the timeline of events. Accordingly, the undersigned begins this analysis with a chronology of undisputed events based on the documents in the record.

## A. Timeline Based on Documents

On **April 23, 2015**, CO Ruiz-Ojeda issued Rogers a misconduct ticket for being out of place. A copy of the top portion of that ticket is shown below.

[Misconduct ticket image: MDOC Misconduct Report, Prisoner Number 447843, Prisoner Name Rogers, Facility Code KCF, Lock C-1-64, Violation Date 04/23/2015, Time and Place 1600 hours Dinning Room, Misconduct Class II, Charge: Out of Place. Describe Violation: "At 1600 Formal Count time prisoner Rogers # 447843 was in the kitchen. According with Rogers detail he supposed not to be in the kitchen working untill Formal Count was cleared. Rogers had no staff authorization to be in the kitchen. Rogers was ID'd by MDOC ID card." Reporting Staff: Ruiz-Ojeda, Date and Time Written: 04/23/2015 2058 hrs.]

(ECF No. 1-1, PageID.68.[1]) The ticket alleges that Rogers was out of place at the 1600 (4 PM) prisoner count.

The next day, April 24, 2015, CO Ruiz-Ojeda issued Rogers a misconduct ticket for disobeying a direct order at 1347 (1:47 PM). The top portion of that ticket is shown below.

---

[1] A hearing was held on this ticket on April 30, 2015, and Rogers was found not guilty. (ECF No. 1-1, PageID.67.)

6

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **MISCONDUCT REPORT**                                                    CSJ-228
>                                                                          10/10  4835-3228
>
> Prisoner Number: 447843   Prisoner Name: ROGERS   Facility Code: KCF   Lock: C-1-64   Violation Date: 4/24/15
> Time and Place of Violation: 1347hrs/Kitchen Officer's Desk   Contraband Removal Record Provided to Prisoner? ☐ Yes Date  ☒ N/A
> Misconduct Class: ☐ I  ☒ II  ☐ III   Charge(s): DDO (Disobeying a Direct Order)
> Describe Violation: At 1347 prisoner Rogers #447843 was at the kitchen officer's desk, I ordered Rogers to leave the kitchen from a distance of 3 feet and having direct eye contact and Rogers did not leave. Rogers was ID'd by MDOC ID card.
>
> Reporting Staff Member's Name (Print): C/O Ruiz-Ojeda   Date and Time Written: 4/24/15 1403

(ECF No. 1-1, PageID.72.[2])

On April 28, 2015, Rogers filed grievance **KCF-1505-0625-28E**. (ECF No. 58-4, PageID.335.) In the grievance, Rogers complained about CO Ruiz-Ojeda issuing him a false misconduct ticket for being out of place on April 23, 2015. (*Id.*)

The next day, on April 29, 2015, Rogers filed grievance **KCF-15-05-0535-17B**. (ECF No. 58-4, PageID.326 (Step I grievance).) In the grievance, Rogers complained about CO Ruiz-Ojeda retaliating against him on April 24, 2015 because Rogers informed him that Rogers would file a grievance against him. (*Id.*)

On April 30, CO Ruiz-Ojeda issued a Prisoner Program and Work Assignment Evaluation (MDOC Form CSJ-363) on Rogers. That form is shown below.

---

[2] Rogers was found guilty of this charge at a hearing on April 30, 2015. (ECF No. 1-1, PageID.71.)

| MICHIGAN DEPARTMENT OF CORRECTIONS | | | | | | | CSJ-363 REV. 09/06 4835-3363 |
|---|---|---|---|---|---|---|---|
| PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION | | | | | | | |
| Prisoner Name (last) Rogers | (first) | (middle initial) | Prisoner No. 447843 | Lock No. C-1-64 | | Institution Code KCF | |
| Assignment Name Line Worker (Kitchen) | | | Assignment No. | Date Assigned | | Date Evaluated 4/30/15 | |
| Assignment Classification: ☐ Student ☒ Unskilled ☐ Semi-Skilled ☐ Skilled ☐ Other | | | Race | Date Terminated | | Will Take Back ☐ Yes ☒ No | |
| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | | | | 3 or more exceptions | 1-2 exceptions | No exceptions | |
| 1. The prisoner was on time. | | | | 0 | 2 | 3 | |
| 2. The prisoner came on the correct days. | | | | 0 | 2 | 3 | |
| 3. The prisoner followed all safety rules. | | | | 0 | 2 | 3 | |
| 4. The prisoner followed all other rules. | | | | 0 | 2 | 3 | |
| 5. The prisoner followed the assignment authority's instructions. | | | | 0 | 2 | 3 | |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | | | | 0 | 2 | 3 | |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | | | | 0 | 2 | 3 | |
| 8. The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | | | | 0 | 2 | 3 | |
| 9. The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | | | | 0 | 2 | 3 | |
| 10. The prisoner did job/education tasks according to the job/education description. | | | | 0 | 2 | 3 | |
| 11. The prisoner kept the work area neat and clean. | | | | 0 | 2 | 3 | |
| 12. The prisoner worked without constant supervision or direction when appropriate. | | | | 0 | 2 | 3 | |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | | | | 0 | 2 | 3 | |
| REVIEWED: Prisoner's Signature: | | Date: | | COLUMN TOTAL: | 0 | 0 | |
| I RECOMMEND: | | | | TOTAL SCORE: | | 0 | |
| ☐ Entry Pay with 30 Days Conditional - Below Average Score 0-27    ☐ Status Pay Satisfactory - Average Score 28-34 ☐ *Above Average Score 35-39    ☐ Bonus Pay for Food Service Workers    ☒ Termination    ☐ Close Supervision | | | | | | | |

COMMENTS AND RECOMMENDATIONS: On 4/24/15 prisoner Rogers #447843 received a Class II Misconduct for DDO. Rogers was found guilty. I Recommend Rogers's termination.

Evaluator's Printed Name and Title: C/O Ruiz-Ojeda

(ECF No. 58-5, PageID.341.) As seen above, in this form, CO Ruiz-Ojeda recommended that Rogers be terminated and not taken back.

8

A week later, on May 7, 2015, Director Besteman signed a Program Classification Report (MDOC Form CSJ-175) that recommended that Rogers be suspended due to a work-related ticket. A portion of this form is shown below.

[Program Classification Report form image]

(ECF No. 58-7, PageID.365.) This CSJ-175 also stated that Rogers would reclassify on June 7, 2015.

On June 11, 2015, Director Besteman signed another CSJ-175 on Rogers. The form, a portion of which is shown below, may indicate (the meaning is not clear) that Rogers was reclassified as a yard worker or laundry man.

9



(ECF No. 58-8, PageID.367.)

On May 11, 2015, Rogers filed grievance **KCF-15-05-0551-28A** about his May 7, 2015 interaction with Director Bestman. (ECF No. 58-4, PageID.311 (Step I grievance).)

### B. Additions to the Timeline Based on Rogers's Claims

Rogers's complaint states a number of factual allegations that are relevant to this timeline. First, Rogers confirms that CO Ruiz-Ojeda wrote the first misconduct ticket on April 23, 2015. (ECF No. 1, PageID.9-10.) Rogers also says that he spoke to CO Ruiz-Ojeda about this ticket after lunch "chowlines" on April 24, 2015, and, on that day, informed CO Ruiz-Ojeda that he (Rogers) was going to write a grievance. (*Id.*, PageID.10.) Rogers adds that he returned to his housing unit, after this conversation with Ruiz-Ojeda, at around 1:34 PM. (*Id.*)

Thus, according to Rogers's complaint, he did not inform CO Ruiz-Ojeda that he would filed a grievance against CO Ruiz-Ojeda until *after* the issuance of the out-of-place misconduct ticket on April 23, 2015. (ECF No. 1, PageID.9, 18-19; ECF No. 1-1, PageID.65; ECF No. 65-1, PageID.410.) But, Rogers spoke to Ruiz-Ojeda before the issuance of the April 24 ticket. Rogers alleges that during this April 24 talk, CO

10

Ruiz-Ojeda said that he had "something for you since you like writing grievances." (ECF No. 1, PageID.10, 18-19; ECF No. 1-1, PageID.65; ECF No. 65-1, PageID.410.)

Rogers also says that, on May 7, 2015, he was called into Program Classification Director Bestman's office. (ECF No. 1, PageID.14.) According to Rogers, Director Bestman showed Rogers a digital display of Rogers's login and logout times for Rogers's kitchen employment. (ECF No. 1-1, PageID.96 (affidavit).) Rogers requested a print-out of the log, but Director Bestman refused to furnish unless Rogers agreed to sign-off on grievance "**KCF150505350017b**"[3] and stopped filing grievances. (*Id.*)

> C. <u>Claim One</u>: A First Amendment Retaliation Claim Against CO Ruiz-Ojeda for Issuing Rogers a False Misconduct Ticket on April 23, 2015

The undersigned concludes that the factual timeline indicates that Rogers has failed to establish the April 23 misconduct ticket was caused by protected conduct by Rogers.

As demonstrated in the timeline above, Rogers did not mention filing a grievance against CO Ruiz-Ojeda until April 24. CO Ruiz-Ojeda wrote his first misconduct ticket against Rogers on April 23. As a result, CO Ruiz-Ojeda could not have issued Rogers the April 23, 2015 misconduct ticket in retaliation for Rogers's alleged threat to file a grievance.

---

[3]   The grievance number is directly quoted from Rogers's affidavit (ECF No. 1-1, PageID.96). A review of the record suggests that Rogers meant to refer to greievance **KCF-15-05-0535-17B**. (ECF No. 58-4, PageID.323-331.)

11

> D. <u>Claim Two</u>: **First Amendment Retaliation Claim Against CO Ruiz-Ojeda for Issuing Rogers a False Misconduct Ticket on April 24, 2015**

Rogers submitted an affidavit in which he attests that – on April 24, 2015 – he confronted CO Ruiz-Ojeda about the misconduct ticket from the day before and informed CO Ruiz-Ojeda that he intended to file a grievance. (ECF No. 1-1, PageID.65.) Rogers further swore that CO Ruiz-Ojeda told him that CO Ruiz-Ojeda had "something for [Rogers]. Since [Rogers] like[s] writing grievances complaints." (*Id.*) This portion of Rogers's affidavit is shown below.

> STATE OF MICHIGAN )
> ) AFFIDAVIT OF SEAN ADAM ROGERS
> COUNTY OF MANISTEE )
>
> I, Sean Adam Rogers #447843, being first duly sworn deposes as follows; Under the penalty of perjury that:
>
> 1.) On April 24, 2015, Kinross Correctional Facility (KCF). Officer (UNKNOWN) RUIZ-OJEDA stated to affiant, "I got something for you. (Meaning Rogers). Since you like writing grievances complaints". This being after I, (Sean Adam Rogers) informed officer Ruiz-Ojeda. A grievance complaint is under way. Against officer Ruiz-Ojeda, For his actions against affiant, On April 23, 2015.
>
> 2) On that same day of April 24, 2015, Officer Ruiz-Ojeda would not allow this affiant. A chance to return, to the Food Service Assignment. Dinner Time Shift. Due to Officer Ruiz-Ojeda. Telling affiant, "I was getting terminated with his help."
>
> AFFIANT'S SIGNATURE _____ 7-11-18
> Affiant's above signature was verified by me this 11 day of July, 2018.
>
> NOTARY PUBLIC'S SIGNATURE and STAMP: _____
>
> LEAH BEREAN
> NOTARY PUBLIC, STATE OF MI
> COUNTY OF GRAND TRAVERSE
> MY COMMISSION EXPIRES Aug 27, 2021
> ACTING IN COUNTY OF _____

(*Id.*) Later in the day, CO Ruiz-Ojeda issued Rogers a Class II misconduct ticket for disobeying a direct order. (ECF No. 58-4, PageID.330.) That timeline of events further denotes a genuine issue of material fact as to whether CO Ruiz-Ojeda's April 24 misconduct ticket was triggered by Rogers's threat to file a grievance.

Defendants argue that CO Ruiz-Ojeda would have issued Rogers a misconduct ticket regardless of Rogers's filing of grievance against him. It is certainly possible that CO Ruiz-Ojeda issued the second misconduct ticket without any consideration

13

of Rogers's threat to file a grievance. But, that is a determination that should be left to the fact-finder. Given the temporal proximity of the threat to file a grievance and the issuance of the ticket, the undersigned concludes that an issue of fact remain.

### E. Claim Three: Retaliation Claim Against CO Ruiz-Ojeda's for Writing CSJ-363 on April 30, 2015

The CSJ-363 that CO Ruiz-Ojeda wrote on April 30, 2015 is shown in the timeline above in Section IV.A. (*See also* ECF No. 58-5, PageID.341.) In this form, CO Ruiz-Ojeda stated that he would not be willing to take Rogers back at his previous job and he recommended Rogers for termination. Although CO Ruiz-Ojeda is not the final decision-maker as to subsequent work assignments for Rogers, he certainly had input into those decisions. His input is reflected in this CSJ-363. As noted above, Rogers alleges that he told CO Ruiz-Ojeda on April 24 that he intended to write a grievance against him. The documents before the Court show that Rogers did, in fact, write two grievances against CO Ruiz-Ojeda. (*See* ECF No. 58-4, PageID.335 (Step I grievance against CO Ruiz-Ojeda dated April 28, 2015); ECF No. 58-4, PageID.326 (Step I grievance against CO Ruiz-Ojeda dated April 29).) In the April 28, 2015 grievance, Rogers stated that he discussed the underlying issue with CO Ruiz-Ojeda. Based on the record before the Court, the undersigned concludes that a genuine issue of material fact remains regarding this retaliation claim.

### F. Claim Four: Retaliation Claim Against Director Besteman for Classifying Rogers as Being Unemployable

With respect to this claim, Rogers submitted an affidavit where he swore that Director Besteman would not take Rogers off suspension and allow Rogers to return

to work at Food Services unless he signed off on grievance **KCF-15-05-0535-17b** and stopped filing grievances. (ECF No. 1-1, PageID.96-97.) Rogers's statements establish the causal connection between Director Besteman's adverse conduct and the exercise of Rogers's protected conduct (the filing of grievance **KCF-15-05-0535-17b**). As a result, the undersigned concludes that there is a genuine issue of fact as to whether Rogers established a First Amendment retaliation claim against Director Besteman.

The undersigned concludes that there is also a genuine issue of fact regarding this claim because Defendants failed to submit evidence showing that Director Besteman would have engaged in the same conduct in the absence of Rogers's protected conduct. Defendants direct the Court's attention to applicable sections of the MDOC's Policy Directive (ECF No. 58-3, PageID.298 (MDOC PD 05.01.100 ¶¶ BB, HH-II)), Rogers's work assignment evaluation (ECF No.58-5), and Rogers's reclassification reports (ECF Nos. 58-7, 58-8). The evidence shows that Rogers's suspension from his work assignment was required, that Rogers needed to be considered for reclassification after being found guilty of his April 24, 2015 misconduct, and that Director Besteman had the discretion[4] to decide whether to

---

[4] Defendants state that Director "Besteman was required to reclassify [Rogers] because Plaintiff was found guilty of a work-related misconduct." (ECF No. 58, PageID.267.) However, the cited MDOC provision states that a "prisoner shall not be returned to the same assignment *if* the Classification Director determines it to be a threat to the safety or security of the facility." (ECF No. 58-3, PageID.298 (MDOC PD 05.01.100 ¶ II) (emphasis added).) Other than Defendants simply arguing that Rogers's April 24, 2015 misconduct was work-related, there is no evidence that states that Rogers's misconduct was "a threat to the safety or security of the facility." (*Id*.) Moreover, when considered for reclassification, "[a] prisoner *may* be reclassified as

15

reclassify Rogers as being unemployable.  The cited evidence does not address, however, whether Director Rogers would have refused to provide Rogers with Rogers's reclassification form if Rogers had not filed a grievance.  Consequently, the undersigned concludes that there is a genuine issue of fact that precludes the granting of summary judgment on Rogers's claim against Director Besteman.

### G. Qualified Immunity Argument

As an alternative argument, Defendants argue that they are shielded from liability based on the doctrine of qualified immunity.  Specifically, Defendants contend that Rogers failed to provide sufficient facts to establish whether Rogers constitutional rights were violated.  For the following reasons, the undersigned concludes that only one of Rogers's constitutional claims is barred by qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly

---

unemployable" when "[t]he prisoner has a documented history of disruptive behavior on a work or academic assignment."  (*Id.*, PageID.297 (MDOC PD 05.01.100 ¶ BB) (emphasis added).)  Simply put, Director Besteman had discretion when deciding whether to reclassify Rogers as being unemployable.

16

established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.

17

> The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ––––, ––––, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

As mentioned in Section V, Rogers needed to submit evidence that establishes (1) that he was engaged in protected conduct; (2) that an adverse action was taken

18

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. For the reasons stated in Section VI, the undersigned concludes that there is no genuine issue of fact that Rogers failed to establish his First Amendment retaliation claim based on the April 23, 3025 misconduct ticket. Accordingly, the undersigned concludes that the Rogers's first claim is also barred by the doctrine of qualified immunity.

Rogers's remaining First Amendment retaliation claims are not subject to dismissal based on the doctrine of qualified immunity. As noted above, the undersigned concludes that genuine issues of fact remain regarding claims 2, 3 and 4. Furthermore, the Sixth Circuit has repeatedly held that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill*, 630 F.3d at 472 (quoting *Herron*, 203 F.3d at 415). Accordingly, the undersigned concludes that Rogers's First Amendment rights were clearly established at the time of Defendants' adverse actions. Accordingly, the undersigned also concludes the doctrine of qualified immunity does not bar the Rogers's second claim against CO Ruiz-Ojeda and claim against Director Besteman.

### H. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion (ECF No. 57) as to Rogers's first First Amendment retaliation claim against

CO Ruiz-Ojeda and deny Defendants' motion as to all other claims.  If the Court accepts this recommendation, then claims 2, 3 and 4 will remain.

Dated:   January 26, 2021                     /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).